IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAULA PARKS MCCLINTOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:17-cv-00259-JAG |
| | ) |
| CONTINUUM PRODUCER SERVICES, L.L.C., | ) |
| | ) |
| Defendant. | ) |

## ORDER AWARDING ATTORNEYS' FEES

Before the Court is Class Counsel's Motion for Approval of Attorneys' Fees (Dkt. No. 47) (the "Motion") and Memorandum of Law in Support Thereof (Dkt. No. 48) (the "Memorandum"), wherein Class Counsel seeks entry of an Order approving Class Counsel's request for Attorneys' Fees in the amount of $300,000.00. On January 17, 2020, the Court issued an Order referring the Motion, and others, to the Honorable Kimberly E. West, United States Magistrate Judge, for a report and recommendation and to preside over the Final Fairness Hearing (Dkt. No. 55). On February 12, 2020, Judge West conducted a Final Fairness Hearing to determine, among other things, whether the Motion should be approved (Dkt. No. 59), and on May 19, 2020, issued a Report and Recommendation (Dkt. No. 60) wherein she recommended that the motions should be granted and the parties' proposed orders accurately reflected the recommendation. *Id.* at 6.

Judge West advised that any objections to the R&R should be filed no later than June 2, 2020 and the failure to file an objection would waive appellate review of the findings and conclusions made therein. *Id*. The time for objections has passed, and no objection has been filed. Accordingly, the Court, having considered the Motion and Memorandum, all matters and evidence submitted in connection therewith, and the proceedings on the Final Fairness Hearing, hereby

adopts the Report and Recommendation and finds the Motion should be **GRANTED** as follows:

1.	This Order incorporates by reference the definitions in the Settlement Agreement (Dkt. No. 39-1) and all terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement.

2.	The Court, for purposes of this Order, incorporates herein its findings of fact and conclusions of law from its Order and Judgment Granting Final Approval of Class Action Settlement as if fully set forth.

3.	The Court has jurisdiction to enter this Order and over the subject matter of the Litigation and all parties to the Litigation, including all Settlement Class Members.

4.	The Notice stated that Class Counsel would seek attorneys' fees up to $300,000.00, to be paid from the Gross Settlement Fund. *See* Declaration of Jennifer M. Keough on Behalf of Settlement Administrator JND Legal Administration LLC, Regarding Notice Mailing and Administration of Settlement ("JND Decl.") (Dkt. No. 54-4). Notice of Class Counsel's request for attorneys' fees was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the request for attorneys' fees is hereby determined to have been the best notice practicable under the circumstances, constitutes due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfies the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.

5.	Class Counsel provided the Court with abundant evidence in support of their request for attorneys' fees, including but not limited to: (1) the Motion and Memorandum; (2) Declaration of Bradley E. Beckworth, Patrick M. Ryan, and Robert N. Barnes on Behalf of Class Counsel ("Joint Class Counsel Decl.") (Dkt. No. 54-2); (3) Declarations of Nix Patterson,

LLP; Ryan Whaley Coldiron Jantzen Peters & Webber; Barnes & Lewis; Whitten Burrage and Lawrence Murphy (Dkt. Nos. 47-1 through 47-8); (4) Declaration of Paula Parks McClintock ("McClintock Decl.") (Dkt. No. 54-1); (5) JND Decl.; and (6) the Affidavits of Absent Class Members Saydee Resources, LLP and Little Land Co. (Dkt. Nos. 54-6 and 54-7). This evidence was submitted to the Court well before the objection and opt-out deadline, and none of the evidence was objected to or otherwise refuted by any Settlement Class Member.

6. Class Counsel is hereby awarded Attorneys' Fees of $300,000.00, to be paid from the Gross Settlement Fund. In making this award, the Court makes the following findings of fact and conclusions of law:

(a) The Settlement has created a fund of $900,000.00 in cash for immediate payment to the Settlement Class. Settlement Class Members will benefit from the Settlement that occurred because of the substantial efforts of Class Representative and Class Counsel;

(b) On December 4, 2019, JND caused the Short Form Notice of Settlement to be mailed to 20,455 unique mailing records identified in the mailing data. *See* JND Decl. at ¶10. The Notice expressly stated that Class Counsel would seek attorney's fees up to $300,000.00. The Short Form Notice also directed class members to a website for further information, including the Long Form Notice, and provided the option of requesting a Long Form Notice be sent via U.S. Mail;

(c) Class Counsel filed its Motion approximately fourteen (14) days prior to the deadline for Settlement Class Members to object. No objections were filed in opposition to Class Counsel's Motion for Approval of Attorneys' Fees by the listed deadline and thus, any objections to the requested fees are waived;

(d) The Parties here contractually agreed that the Settlement Agreement shall be governed *solely* by federal common law with respect to certain issues, including the right to and reasonableness of attorneys' fees and reimbursement of expenses:

> To promote certainty, predictability, the full enforceability of this Settlement Agreement as written, and its nationwide application, this Settlement Agreement hall be governed *solely by federal law*, both substantive and procedural, as to due process, class certification, judgment, collateral estoppel, res judicata, release, settlement approval, allocation, Case Contribution Award, the right to and reasonableness of Plaintiff's *Attorneys' Fees* and Litigation Expenses, and all other matters for which there is federal procedural or common law, including federal law regarding federal equitable common fund class actions.

Settlement Agreement at ¶11.8 (emphasis added);

(e) This choice of law provision should be and is hereby enforced. *See Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999) (citing *Restatement (Second) of Conflict of Laws* § 187, cmt. e (Am. Law Inst. 1988)); *see also Williams v. Shearson Lehman Bros.*, 1995 OK CIV APP 154, ¶ 17, 917 P.2d 998, 1002 (concluding that parties' contractual choice of law should be given effect because it does not violate Oklahoma's constitution or public policy); *Barnes Group, Inc. v. C & C Prods., Inc.*, 716 F.2d 1023, 1029 n.10 (4th Cir. 1983) ("Parties enjoy full autonomy to choose controlling law with regard to matters within their contractual capacity."). This Court has enforced similar language in prior class action settlements. *See, e.g., Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS (E.D. Okla. Mar. 8, 2019) (Dkt. No. 120 at 4-5); *Reirdon v. Cimarex Energy Co.*, No. 16-cv-113-KEW (E.D. Okla. Dec. 18, 2018) (Dkt. No. 105 at 4-5); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW (E.D. Okla. Mar. 27, 2018) (Dkt. No. 231 at 5); *Reirdon v. XTO Energy Inc.*, No. 16-cv-00087-KEW (E.D. Okla. Jan. 29, 2018) (Dkt. No. 124 at 4-5). The Court is aware of the Tenth

Circuit's holding in *Chieftain Royalty Co. v. EnerVest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455 (10th Cir. 2017). The Court finds the *EnerVest* decision does not bear on the Court's decision here because the Settlement Agreement in this case specifically includes the choice of law language set forth above and, as such, the Court's analysis is governed by the Tenth Circuit's long line of jurisprudence in common fund class actions under the common fund doctrine. *See Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849 (10th Cir. 1993);

  (f) Federal Rule of Civil Procedure 23(h) states "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." An award of attorneys' fees is a matter uniquely within the discretion of the trial judge, who has firsthand knowledge of the efforts of counsel and the services provided. *Brown v. Phillips Petroleum Co.*, 838 F.2d 453 (10th Cir. 1988). Such an award will only be reversed for abuse of discretion. *Id.*; *Gottlieb v. Barry*, 43 F.3d 474, 486 (10th Cir. 1994). Here, the requested fees are specifically authorized by law, federal common law, which is specifically authorized by an express agreement of the parties. *See* Settlement Agreement at ¶¶7.1, 11.8. Under the Parties' chosen law (federal common law), district courts have discretion to apply either the percentage of the fund method or the lodestar method—but, in the Tenth Circuit, the percentage of the fund method is clearly preferred. *Brown*, 838 F.2d at 454; *Gottlieb*, 43 F.3d at 483; *Chieftain Royalty Co. v. Laredo Petro., Inc.*, No. CIV-12-1319 (W.D. Okla. May 13, 2015) (Dkt. No. 52 at 5) (the "*Laredo* Fee Order"). Further, in the Tenth Circuit, in a percentage of the fund recovery case such as

this, where federal common law is used to determine the reasonableness of the attorneys' fee under Rule 23(h), neither a lodestar nor a lodestar cross check is required. *Id*.;

(g) This Court has acknowledged the Tenth Circuit's preference for the percentage method and rejected application of a lodestar analysis or lodestar cross check. *See, e.g., CompSource Oklahoma v. BNY Mellon, N.A.*, No. CIV-08-469-KEW, 2012 U.S. Dist. LEXIS 185061, at *23 (E.D. Okla. Oct. 25, 2012) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.") (citing *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012)); *Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS (E.D. Okla. Mar. 8, 2019) (Dkt. No. 120 at 21-24); *Reirdon v. Cimarex Energy Co.*, No. 16-cv-113-KEW (E.D. Okla. Dec. 18, 2018) (Dkt. No. 105); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW (E.D. Okla. Mar. 27, 2018) (Dkt. No. 231); *Reirdon v. XTO Energy Inc.*, No. 16-cv-00087-KEW (E.D. Okla. Jan. 29, 2018) (Dkt. No. 124); *Cecil v. BP America Production Co.*, No. 16-cv-00410-KEW (E.D. Okla. Nov. 19, 2018) (Dkt. No. 260).[1] Other Oklahoma federal courts agree. *See, e.g., Northumberland County Ret. Sys. v. GMX Res. Inc.*, No. CIV-11-520 (W.D. Okla. July 31, 2014) ("The Court is not required to conduct a lodestar assessment of the hours versus a reasonable hourly rate. Nonetheless, even if such an assessment were made, the Court would reach the same conclusion that the requested fees are reasonable.") (Dkt. No. 150 at n.1); *see also Laredo* Fee Order at 5 ("In the Tenth Circuit, the preferred approach for determining attorneys' fees in common fund

---

[1] The MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004) also approves of the percentage of the fund method for determining attorneys' fees.

cases is the percentage of the fund method."); *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. CIV-08-668-R (W.D. Okla. Oct. 5, 2012) (Dkt. No. 329);

(h) The percentage methodology calculates the fee as a reasonable percentage of the value obtained for the benefit of the class. *See Brown*, 838 F.2d at 454. When determining attorneys' fees under this method, the Tenth Circuit evaluates the reasonableness of the requested fee by analyzing the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Brown*, 838 F.2d at 454-55. Not all of the factors apply in every case, and some deserve more weight than others depending on the facts at issue. *Id.* at 456. Based upon that analysis, the applicable law, and the evidence submitted to the Court, I have concluded that the requested fee of $300,000 is reasonable;

(i) The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the litigation, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Gottlieb*, 43 F.3d at 482 n. 4;

(j) I find that the eighth *Johnson* factor—the amount involved in the case and the results obtained—weighs heavily in support of the requested fee. *See Brown*, 838 F.2d at 456 (holding this factor may be given greater weight when "the recovery [is] highly

7

contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class."); FED. R. CIV. P. 23(h), adv. comm. note (explaining for a "percentage" or contingency-based approach to class action fee awards, "results achieved is the basic starting point");

(k) Here, the evidence shows that, under the results obtained factor, the Fee Request is fair and reasonable under the circumstances. The Gross Settlement Fund of $900,000.00, which alone is a significant recovery for the Class, as this immediate cash payment represents approximately 65% of the Settlement Class' alleged statutory interest underpayment for the principal claim asserted by the Class for late payments made between May 2012 and February 2018. *See* Affidavit of Barbara A. Ley at ¶3;

(l) In valuing the result obtained for purposes of determining a reasonable fee to award under the Tenth Circuit's percentage of recovery method, it is well-established that the fee award should be based on the total economic benefit bestowed on the class. *See, e.g.*, *Fager v. Centurylink Comm'cns*, No. 14-cv-00870 JCH/KK, 2015 U.S. Dist. LEXIS 190795, at *7-8 (D.N.M. June 25, 2015) (collecting cases), *aff'd by* 854 F.3d 1167 (10th Cir. 2016); *see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 479 (1980) (explaining that, in common fund cases, the fee to be awarded should be based on "the full value of the benefit to each absentee member" obtained through the "entire judgment fund");

(m) Here, the Settlement represents a significant, concrete monetary benefit to the Settlement Class. Unlike cases in which absent class members' recovery is contingent upon their submission of information or some sort of complicated claims process, here, these benefits are guaranteed and automatically bestowed upon the Settlement Class as a result of the Settlement. Accordingly, the "results obtained" factor strongly supports a fee

award of $300,000.00 to be paid from the Gross Settlement Fund.[2] Joint Class Counsel Decl. ¶86 (Dkt. No. 54-2);

(n) I find the other *Johnson* factors also support and weigh strongly in favor of the Fee Request. First, I find the evidence of the time and labor involved weighs in favor of the Fee Request. The time and labor Class Counsel and Plaintiff's Counsel have expended in the research, investigation, prosecution and resolution of this Litigation is set forth in detail in the Joint Class Counsel Declaration (Dkt. No. 54-2). In summary, this evidence proves that for over two years, Class Counsel investigated and analyzed the Settlement Class' claims and conducted discovery, reviewing documents and a large

---

[2] The outstanding result obtained is in stark contrast to cases like *Hess v. Volkswagen of America, Inc.*, 2014 OK 111, 341 P.3d 662, where fees are based upon coupons or claims made settlements with no guaranteed common fund. *Hess* was a fee-shifting case where defendants contractually agreed to incur liability for the class' attorneys' fees, resulting in application of the lodestar method. *See id.* at 666. The concurring opinion even recognized there are other cases where **"the attorney-fee award is based on a percentage of the plaintiffs' recovery**." *Id.* at 672, n. 3 (emphasis added). And, that case was an egregious outlier where the entire class got less than $46,000, but the lawyers were asking for over **$14 million**—a result that could never pass muster under the "result obtained" factor. *See id.* at 673. On remand, the trial court, as instructed, subtracted the fees generated in the failed Florida litigation from the lodestar fee and "then reduced the lodestar by 70%" to arrive at an attorney fee in the amount of $983,616.75, together with expenses and postjudgment interest. *Hess v. Volkswagen of America, Inc.*, 2017 OK CIV APP 35, ¶2, 398 P.3d 27. Volkswagen appealed the trial court's award, arguing that "the new attorney fee award - an award which constitutes a mere 13.6% of the prior attorney fee award - is still too high," as it "equals approximately '21.5 times as much money as . . . recovered for the entire class[.]'" *Id.* The Court of Civil Appeals affirmed the trial court's *downward* reduction of the lodestar by 70% given the low recovery obtained in the case, even though the fee awarded and affirmed still represented 21.5 times as much money as recovered for the entire class (Fees of $983,616.75 vs. Class Recovery of $45,780); *see also, e.g.*, *Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.*, No. CJ-2010-38, 2015 WL 5794008, at *2 (Okla. Dist. Ct. Beaver Cty. July 2, 2015) (finding "recovery of 41% of damages within the statute of limitations period" to be "an outstanding benefit to the Settlement Class when compared against other royalty underpayment class action settlements approved by other Oklahoma district courts"). Given the amount involved in this Litigation and the Settlement achieved for the benefit of the Settlement Class, this highly significant factor strongly supports Class Counsel's Fee Request.

9

amount of electronically produced data, including organizational documents, well data, and historical proceeds payments for Oklahoma owners. Class Counsel also deposed two of Defendant's employees on the issues in the case. Class Counsel spent significant time working with accounting experts in the prosecution and evaluation of the Settlement Class' claims and engaged in a lengthy and complex negotiation process to obtain this outstanding Settlement. The process necessary to achieve this Settlement required several months of negotiations and extensive consultation with experts to evaluate and analyze damages. Overall, Class Counsel and Plaintiff's Counsel dedicated approximately 719 past hours of attorney and professional time to this Litigation and reasonably anticipate dedicating an additional 147.5 hours through final approval and distribution;

(o) Second, I find that the evidence regarding the novelty and difficulty of the questions presented in this action weighs in favor of the Fee Request. Class actions are known to be complex and vigorously contested. The Court notes that in addition to the pleadings on file, Declarations and arguments of the parties, the Court has presided over this case for nearly three years and finds that this case presented novel difficult issues. The legal and factual issues litigated in this case involved complex and highly technical issues. The claims involved difficult and highly contested issues of Oklahoma oil and gas law that are currently being litigated in multiple forums. The successful prosecution and resolution of the Settlement Class' claims required Class Counsel to work with various experts to analyze complex data to support their legal theories and evaluate the amount of alleged damages. I find the fact that Class Counsel litigated such difficult issues against the vigorous opposition of highly skilled defense counsel and obtained a significant recovery for the Settlement Class further supports the fee request in this case. Joint Class Counsel

Decl. at ¶51. Moreover, Defendants asserted a number of significant defenses to the Settlement Class' claims that would have to be overcome if the Litigation continued to trial. Thus, the immediacy and certainty of this recovery, when considered against the very real risks of continuing to a difficult trial and possible appeal, weighs in favor of the Fee Request. Joint Class Counsel Decl. at ¶49;

(p)     I find that the third and ninth *Johnson* factors—the skill required to perform the legal services and the experience, reputation and ability of the attorneys—supports the Fee Request. I find the Declarations and other undisputed evidence submitted prove that this Litigation called for Class Counsel's considerable skill and experience in oil and gas and complex class action litigation to bring it to such a successful conclusion, requiring investigation and mastery of complex facts, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses. *See* Joint Class Counsel Decl. at ¶49. I have presided over other cases where various members of Class Counsel were actively involved. Courts in this district are familiar with the work of Nix Patterson, LLP, Ryan Whaley Coldiron Jantzen Peters & Webber, Barnes & Lewis, LLP, Whitten Burrage, and Larry R. Murphy, Jr., and find that these attorneys possess the type of experience, reputation and ability that supports the Fee Request.

The case required investigation and mastery of highly technical issues regarding royalty payments in Oklahoma. *See* Joint Class Counsel Decl. at ¶49. The law firm of Nix Patterson has years of experience litigating royalty underpayment class actions in Oklahoma state and federal courts. *Id.* NP also is highly experienced in class action, commercial, *qui tam*, mass tort, securities, and other complex litigation and has successfully prosecuted and settled numerous class actions, including oil and gas royalty

underpayment class actions. *Id.* Additionally, NP has taken on some of the world's largest corporations in contingent fee litigation, including the tobacco industry, the pharmaceutical industry, and the energy industry. *Id*. NP consists of some of the most experienced complex litigation attorneys in the country. Utilizing creativity and zealous advocacy, these attorneys have achieved huge results for their clients. *Id*. Courts in this district have witnessed this advocacy first-hand and commended the attorneys at Nix Patterson for their work in the case of *CompSource Oklahoma v. BNY Mellon, NA*, No. CIV 08-469-KEW (E.D. Okla.), stating: "It was a hard-fought case, and I think that the legal work on this case has just been absolutely spectacular, and I want to brag on all of you for the work that you put into it." *See* Dkt. No. 54-5). And the same is true here;

(q)     Further, I find the skill, reputation and ability of the Ryan Whaley law firm supports the Fee Request. Ryan Whaley is a litigation, energy, and environmental law firm based in Oklahoma City with national, regional, and state clients and has litigated class actions and complex commercial litigations in courts across the country. *See* Joint Class Counsel Decl. at ¶54. Founding partner Pat Ryan has more than 48 years of experience in Oklahoma state and federal courts and is best known for successful high-profile cases, including his work as U.S. Attorney in the prosecution and conviction of Oklahoma City Bombing defendants Timothy McVeigh and Terry Nichols in Denver, Colorado, and securing the acquittal of a founder/CEO in one of the largest corporate fraud cases prosecuted by the U.S. Department of Justice. *Id*.;

(r)     I also find the skill, reputation and ability of the law firm of Barnes & Lewis, LLP also supports the Fee Request. *See* Joint Class Counsel Decl. ¶55. That firm has been lead counsel in at least fourteen (14) Oklahoma oil and gas class action cases that have

been concluded and resulted in combined Common Funds exceeding $700 million – far more than any other law firm. BL also holds the distinction of having been lead counsel in the first oil and gas class action nationwide to have been successfully tried to a jury;

(s)   I find that the quality of representation by counsel on *both* sides of this Litigation was high. Defendant is represented by skilled class action defense attorneys who spared no effort in the defense of their client. *Compare In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976). Simply put, without the experience, skill and determination displayed by *all* counsel involved, the Settlement would not have been reached. *See* Joint Class Counsel Decl. at ¶¶51-59. I find these factors strongly support the Fee Request;

(t)   I find that the evidence regarding the fourth and seventh *Johnson* factors—the preclusion of other employment by Class Counsel and time limitations imposed by the client or circumstances—weighs in favor of the Fee Request. The Declarations and other undisputed evidence prove that Class Counsel necessarily were hindered in their work on other cases due to their dedication of time and effort to the prosecution of this Litigation. *See* Joint Class Counsel Decl. at ¶46. This case was filed two and a half years ago in May 2017, and has required the devotion of significant time, manpower and resources from Class Counsel over that period. *See id*. Class Counsel has spent substantial time and effort in negotiating and preparing the necessary paperwork related to the Settlement. *See id*. A case of the size and complexity of this one deserves and requires the commitment of a significant percentage of the total time and resources of firms the size of those of Class Counsel. *See id*. Prosecution of this litigation placed a significant burden on counsel's time and resources. *See id*. Accordingly, I find these factors support the Fee Request;

(u) I find the evidence regarding the fifth *Johnson* factor—the customary fee and awards in similar cases—further weighs in favor of the Fee Request. Class Counsel and Ms. McClintock negotiated and agreed to prosecute this case based on a contingent fee up to 40%. *See* McClintock Decl. at ¶7; Joint Class Counsel Decl. at ¶41. However, Class Counsel is seeking a fee of only 1/3. I find this fee is consistent with the market rate and is in the range of the "customary fee" in oil and gas class actions in Oklahoma state courts over the past fifteen (15) years. *See* Joint Class Counsel Decl. at ¶61; *see also, e.g.*, *Fitzgerald Farms,* 2015 WL 5794008, at *3 (collecting Oklahoma cases to find in "the royalty underpayment class action context, the customary fee is a 40% contingency fee" and awarding 40% fee of $119 million common fund);

(v) Federal and state courts in Oklahoma often approve similar and higher fee awards in similar cases. For example, this Court recently approved a 40% fee in similar royalty underpayment cases. *See, e.g., Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS (E.D. Okla. Mar. 8, 2019) (Dkt. No. 120); *Reirdon v. Cimarex Energy Co.*, No. 16-cv-113-KEW (E.D. Okla. Dec. 18, 2018) (Dkt. No. 105); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW (E.D. Okla. Mar. 27, 2018) (Dkt. No. 231); *Reirdon v. XTO Energy Inc.*, No. 16-cv-00087-KEW (E.D. Okla. Jan. 29, 2018) (Dkt. No. 124). Moreover, the Western District of Oklahoma approved a 40% fee and a 39% fee in similar royalty underpayment class actions. *See Laredo* Fee Order ("Class Counsel's request of forty percent (40%) of the $6,651,997.95 Settlement Amount is within the acceptable range of attorneys' fees approved by Oklahoma Courts as being fair and reasonable in contingent fee class action litigation . . ."); *QEP* Fee Order at *6 (awarding a fee of $46.5 million, which represented approximately 39% of the cash portion of a $155

million settlement). The typical fee award in similar royalty underpayment class actions in Oklahoma state court is 40%. *See* Joint Class Counsel Decl. at ¶42. Given the outstanding recovery, I find the fact that the Fee Request is in line with the typical fee award granted in similar cases supports its approval;

(w)   Moreover, I find a 1/3 fee is consistent with, if not below, the market rate for high quality legal services in royalty class actions like this. *See, e.g., Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS (E.D. Okla. Mar. 8, 2019) (Dkt. No. 120); *Reirdon v. Cimarex Energy Co.*, No. 16-cv-113-KEW (E.D. Okla. Dec. 18, 2018) (Dkt. No. 105); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW (E.D. Okla. Mar. 27, 2018) (Dkt. No. 231); *Reirdon v. XTO Energy Inc.*, No. 16-cv-00087-KEW (E.D. Okla. Jan. 29, 2018) (Dkt. No. 124); *Cecil v. BP America Production Co.*, No. 16-cv-00410-KEW (E.D. Okla. Nov. 19, 2018) (Doc. No. 260); *Laredo* Fee Order at 8 ("The market rate for Class Counsel's legal services also informs the determination of a reasonable percentage to be awarded from the common fund as attorneys' fees."). This Court has previously held a contingency fee negotiated at arms' length at the outset of the litigation "reflect[s] the value the Class Representatives placed on the future success of [the] [a]ction." *CompSource Oklahoma*, 2012 U.S. Dist. LEXIS 185061, at *23; *see also Laredo* Fee Order at 8 ("Class Representative negotiated at arm's-length and agreed to a forty percent (40%) contingency fee at the outset of this litigation, reflecting the value Class Representative placed on the future success of this Litigation."). Here, Class Representative agreed Class Counsel would represent her on a contingency fee basis, not to exceed 40%. *See* McClintock Decl. at ¶7. Class Counsel is seeking a fee of 1/3. Ms. McClintock's Declaration demonstrates her continued support of the fairness and

reasonableness of the Fee Request. McClintock Decl. at ¶¶14-15. I find this factor supports the Fee Request. Further, Class Counsel submitted significant evidence regarding the fee and market rate that supports this factor. Class Counsel have specialized skill, experience and qualifications in the area of market value of attorneys' fees in complex litigation, generally—and complex oil and gas litigation, specifically—and have submitted significant testimony in their Declarations demonstrating that the fee structure negotiated with Ms. McClintock is the market rate for such cases. *See* Joint Class Counsel Decl. at ¶43;

(x) I find the sixth *Johnson* factor—the contingent nature of the fee—also supports the Fee Request. Class Counsel undertook this Litigation on a purely contingent fee basis (with the amount of any fee being subject to Court approval), assuming a substantial risk that the Litigation would yield no recovery and leave them uncompensated. *See* Joint Class Counsel Decl. at ¶66. Courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. As Professor Geoffrey Miller has aptly noted, "the risk of no recovery in complex cases of this type is very real and is heightened when plaintiffs' counsel press to achieve the very best results for those they represent." *See Reirdon v. Cimarex Energy Co.*, No. 16-CV-113-KEW (E.D. Okla.) (Dkt. No. 64 at ¶55); *see also* Joint Class Counsel Decl. at ¶66. Class Counsel expended thousands of hours litigating several similar royalty underpayment actions where the courts denied class certification and thus, Class Counsel received no remuneration whatsoever despite their diligence and expertise.[3] Simply put, it would not

---

[3] *See, e.g.*, *Foster v. Apache*, 285 F.R.D. 632 (W.D. Okla. 2012); *Foster v. Merit Energy Co.*, 282 F.R.D. 541 (W.D. Okla. 2012); *Morrison v. Anadarko Petroleum Co.*, 280 F.R.D. 621 (W.D. Okla. 2012); *Tucker v. BP Am. Prod. Co.*, 278 F.R.D. 646 (W.D. Okla. 2011); Miller Decl. at ¶52.

have been economically prudent or feasible if Class Counsel were to pursue the case under any prospect that the Court would award a fee on the basis of normal hourly rates;

(y) Further, as noted above, Class Representative negotiated and agreed Class Counsel would represent her on a contingency fee basis, not to exceed 40%. *See* McClintock Decl. at ¶7; Joint Class Counsel Decl. at ¶41. This agreed-upon fee reflects the value of this Litigation as measured when the risks and uncertainties of litigation still lay ahead. *See CompSource*, 2012 U.S. Dist. LEXIS 185061, at *23-25; *Laredo* Fee Order at 8. If Class Counsel had not been successful, they would have received zero compensation (not to mention reimbursement for expenses). Joint Class Counsel Decl. at ¶66; *see also Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc.*, 2003 OK 72, ¶¶11 & 15-23, 77 P.3d 1042, 1049-53. Prearranged fees, whether fixed or contingent, can be helpful in setting court awarded fees in class actions. *See, e.g.,* Opinion at ¶¶ 12-22 in *Adkisson v. Koch Industries, Inc.*, No. 106,452 (Okla. Civ. App. Aug. 7, 2009) (unpublished), *cert. denied*, (Okla. Feb. 4, 2010); *Sholer v. State ex rel. Dep't of Public Safety*, 1999 OK CIV APP 100, ¶14, 990 P.2d 294, 299-300. Moreover, even though federal law, not Oklahoma law, governs this issue, I note that when the attorneys' compensation is contingent, Oklahoma law recognizes any attorneys' fee award must account for the risks inherent in such engagements by adjusting "upward the basic hourly rate" to allow for a "risk-litigation" premium. *See, e.g.*, *Morgan v. Galilean Health Enters., Inc.*, 1998 OK 130, ¶14, 977 P.2d 357, 364 n. 30 (citing *Brashier v. Farmers Ins. Co.*, 1996 OK 86, ¶11, 925 P.2d 20, 25 n. 22); *Oliver's Sports Ctr., Inc. v. Nat'l Std. Ins. Co.*, 1980 OK 120, ¶6, 615 P.2d 291, 294-95. Accordingly, I find this factor strongly supports the Fee Request;

(z)     I find the evidence shows that the tenth *Johnson* factor—the undesirability of the case—weighs in favor of the Fee Request. Compared to most civil litigation, this Litigation clearly fits the "undesirable" test and no other firms or plaintiffs have asserted these claims against Cimarex. *See* Joint Class Counsel Decl. at ¶66. Few law firms would be willing to risk investing the time, trouble and expenses necessary to prosecute this Litigation for multiple years. *Id*. Further, Defendant has proven itself to be a worthy adversary. There was no doubt from the beginning that this lawsuit would be a lengthy undertaking. *Id*. The investment by Class Counsel of their time, money and effort, coupled with the attendant potential of no recovery and loss of all the time and expenses advanced by Class Counsel, rendered the case sufficiently undesirable so as to preclude most law firms from taking a case of this nature. *Id*. And, this Litigation involved a number of uncertain legal and factual issues. *Id*. at ¶49. Indeed, in another complex royalty underpayment class action, one Oklahoma state court explained:

> Few law firms are willing to litigate cases requiring review of tens of thousands of pages of detailed contracts and accounting records, advance payment of hundreds of thousands of dollars in consultants and expert witness fees, and investment of substantial time, effort, and other expenses throughout an unknown number of years to prosecute a case with high risk, both at the trial and appellate levels.

*Fitzgerald Farms*, 2015 WL 5794008, at *8. I find the same principle holds true here. Class Counsel reviewed thousands of pages of documents, including a large amount of electronically produced data, well data, gas payment statements and historical royalty payments for Oklahoma royalty owners. Joint Class Counsel Decl. at ¶10. Class Counsel and Plaintiff's Counsel also advanced $14,608.58 in litigation expenses to date. And, Class Counsel and Plaintiff's Counsel expended approximately 719 past hours of time over the length of this action. I find this factor also supports the Fee Request;

18

(aa) I find the eleventh *Johnson* factor—the nature and length of the professional relationship with the client—also supports the Fee Request. Ms. McClintock is a highly educated and experienced royalty owner. *See* McClintock Decl. at ¶¶4-5. She was and remains very active in this litigation. *Id.* at ¶¶8-11. Further, Class Counsel has represented Ms. McClintock in other litigation. Joint Class Counsel Decl. at ¶69. Ms. McClintock negotiated a 40% fee when she agreed to be class representative in this litigation. *See* McClintock Decl. at ¶7; Joint Class Counsel Decl. at ¶41. And, she supports the Fee Request. McClintock Decl. at ¶¶12-15. Accordingly, I find this factor supports Class Counsel's fee request[4];

(bb) In summary, upon consideration of the evidence, pleadings on file, arguments of the parties, and the applicable law, I find that the *Johnson* factors under federal common law weigh strongly in favor of the Fee Request and that the Fee Request is fair and reasonable and should be and is hereby approved.

7. Any appeal or any challenge affecting this Order Awarding Attorneys' Fees shall in no way disturb or affect the finality of the Order and Judgment Granting Final Approval of Class

---

[4] The foregoing twelve *Johnson* factors are also included in the statutory enhancement factors in Oklahoma and thus, are supported by the same evidence under Oklahoma state law. *See* 12 O.S. § 2023(G)(4)(e). The only additional factor under Oklahoma law—the risk of recovery in the litigation—further supports the fee request here. As discussed above, this Litigation involved complex issues of law and fact that placed the ultimate outcome in doubt. There was no guarantee Plaintiff and the Class would prevail on their legal theories at class certification, summary judgment and/or trial. Defendant denies all allegations of wrongdoing or liability and that the Litigation could have been properly maintained as a class action. *See* Settlement Agreement at ¶11.1. In the absence of the Settlement, the outcome of the complex issues in this case would remain uncertain until their ultimate resolution by the Court or a jury, thus placing substantial risk on both Parties. Accordingly, if Oklahoma law were applicable here, I find this factor also weighs in favor of the Fee Request. Because I find that the evidence submitted here supports approval of the Fee Request under each of the Oklahoma factors, I also find the Fee Request is be fair, reasonable and approved under Oklahoma law as well.

Action Settlement, the Settlement Agreement or the Settlement contained therein.

8.  Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Litigation, including the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Order.

9.  There is no reason for delay in the entry of this Order and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b), Federal Rules of Civil Procedure.

**IT IS SO ORDERED** this 4th day of June, 2020.

/s/
John A. Gibney, Jr.
United States District Judge

_____
JOHN A. GIBNEY, JR.
UNITED STATES DISTRICT JUDGE